**CLARION RIVER POWER CO. v. SMITH et al.**

No. 5398.

Court of Appeals of the District of Columbia.
Argued May 4, 1932.
Decided May 31, 1932.

Wm. Marshall Bullitt, of Louisville, Ky., and Robert F. Cogswell, of Washington, D. C., for appellant.

Seth W. Richardson, Asst. Atty. Gen., and Leo A. Rover, U. S. Atty., John W. Fi-helly, Asst. U. S. Atty., and James F. Lawson, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

ROBB, Associate Justice.

Appeal from a decree in the Supreme Court of the District dismissing the bill (filed October 24, 1930) of the Clarion River Power Company, hereinafter called the Clarion Company. The purpose of the bill was to determine whether the Federal Water Power Act of June 10, 1920, c. 285, 41 Stat. 1063– (16 USCA § 791 et seq.), authorized the Federal Power Commission to conduct an official hearing to ascertain the original cost and net investment of the Clarion Company in a water power project on the Clarion river, in the state of Pennsylvania, known as the Piney project.

In the Federal Water Power Act a comprehensive scheme is presented under which water power on navigable rivers may be developed by private interests for the benefit of the public. To administer the provisions of the act, a "Federal Power Commission," composed originally of three members, was established. The membership has been increased to five (Act of June 23, 1930, c. 572, 46 Stat. 797, 16 USCA §§ 792 and note, 793, 797).

Under section 3 of the act (16 USCA § 796), "net investment" means the actual legitimate original cost as defined and interpreted in the "classification of investment in road and equipment of steam roads," issue of 1914, Interstate Commerce Commission," etc.

Under section 4 (a) the commission is authorized to make investigations for certain specified purposes "to the extent the commission may deem necessary or useful for the purposes of this chapter"; and *"in order to aid the commission in determining the net investment of a licensee in any project"* (italics ours), it is made the duty of the licensee to file a sworn statement, in duplicate, showing in detail such cost, one copy of which the commission is required to file with the Secretary of the Treasury. It is also made the duty of the licensee to grant to the commission free access to such project, addition, or betterment, and to all maps, profiles, contracts, reports of engineers, accounts, books, records, and all other papers and documents relating thereto.

Under section 4 (f) the commission is authorized to prescribe rules and regulations

for a system of accounts and for the maintenance thereof by licensees. Authority is also conferred on the commission to examine all books and accounts of such licensees at any time; "to require them to submit at such time or times as the commission may require. statements and reports including full information as to assets and liabilities, capitalization, *net investment* and reduction thereof, gross receipts, interest due. and paid, depreciation and other reserves, *cost of project*, cost of maintenance and operation of the project, cost of renewals and replacements of the project works, and as to depreciation of the project works and as to production, transmission, use and sale of power, *also to require any licensee to make adequate provision for currently determining said costs and other facts."* (Italics ours.)

Under section 4 (g) the commission is authorized to hold hearings and to order testimony to be taken in connection with the application for any permit or license, "or the regulation of rates, service, or securities, or the making of any investigation, as provided in this chapter."

Under section 4 (h) the commission is authorized "to perform any and all acts, to make such rules and regulations, and to issue such orders not inconsistent with this chapter as may be necessary and proper for the purpose of carrying out the provisions of this chapter." (16 USCA § 797 (a, f–h).

Section 6 (16 USCA § 799) prescribes that licenses under the act shall be issued for a period not exceeding fifty years, and that "each such license shall be conditioned upon acceptance by the licensee of all of the terms and conditions of this chapter and such further conditions, if any, as the commission shall prescribe in conformity with this chapter, which said terms and conditions and the acceptance thereof shall be expressed in said license."

Under section 10 (d), 16 USCA § 803 (d), after the first twenty years of operation of any project, "out of surplus earned thereafter, if any, accumulated in excess of a specified reasonable rate of return upon the actual, legitimate investment of a licensee in any project or projects under license the licensee shall establish and maintain amortization reserves, which reserves shall, in the discretion of the commission, be held until the termination of the license or be applied from time to time in reduction of the net investment."

Section 10 (e), 16 USCA § 803 (e), provides "for the expropriation to the Government of excessive profits until the respective States shall make provision for preventing excessive profits or for the expropriation thereof to themselves, or until the period of amortization as herein provided is reached, and in fixing such charges the commission shall seek to avoid increasing the price to the consumers of power by such charges, and charges for the expropriation of excessive profits may be adjusted from time to time by the commission as conditions may require."

Section 14 (16 USCA § 807) provides that upon not less than two years' notice in writing from the commission the United States shall have the right upon the expiration of any license to take over and operate any project or projects, "upon the condition that before taking possession it shall pay the net investment of the licensee in the project or projects taken, not to exceed the fair value of the property taken. * * * The net investment of the licensee in the project or projects so taken and the amount of such severance damages, if any, shall be determined by agreement between the commission and the licensee, and in case they can not agree, by proceedings in equity instituted by the United States in the district court of the United States in the district within which any such property may be located. * * * "

Under section 16 (16 USCA § 809) the United States is authorized to take over a project in time of war by paying such just and fair compensation as may be fixed by the commission "upon the basis of a reasonable profit in time of peace."

Section 19 (16 USCA § 812) makes it a condition of the license that every licensee "which is a public-service corporation, or a person, association, or corporation owning or operating any project and developing, transmitting, or distributing power for sale or use in public service, shall abide by such reasonable regulation of the services to be rendered to customers or consumers of power, *and of rates and charges of payment therefor,* as may from time to time be prescribed by any duly constituted agency of the State in which the service is rendered or the rate charged." (Italics ours.) In the event the project is being operated within a state "which has not authorized and empowered a commission or other agency or agencies within said State to regulate and control the services to be rendered by such licensee or by its customer engaged in public service, or the rates and charges of payment therefor, or the amount or character of securities to be issued by any of said parties, it is agreed as a condition

of such license that jurisdiction is hereby conferred upon the commission, upon complaint of any person aggrieved or upon its own initiative, to exercise such regulation and control until such time as the State shall have provided a commission or other authority for such regulation and control."

The Clarion Company applied for, and on October 13, 1922, was granted, a fifty-year license under the provisions of this act. On April 11, 1930, the company filed with the commission a statement representing the actual, legitimate cost of the construction of the project to be $11,032,816.57. Under the rules and regulations of the commission an examination and audit of the books of the Clarion Company was made by the accounting division of the commission, and a report filed recommending the eliminating of the sum of $6,213,904.78 from the statement of actual, legitimate investment. A copy of this report was served on the Clarion Company, and the company was notified that in the absence of a protest the matter would be presented to the commission "for such action as may be deemed necessary and proper in the premises"; that it should be understood that the findings set out in the report "represent the conclusions of the accounting division on the evidence of record and the report should not be referred to as the decision of the commission." On September 19, 1930, the Clarion Company filed a protest, insisting that its original statement as filed was correct and asserting that the Federal Power Commission was without jurisdiction to make any adjudication or order with reference to the cost of the project. The company was thereafter notified that the matter was set for hearing on the 5th of November, 1930, "for the purpose of receiving testimony and exhibits of the licensee in support of its said protest filed herein." Prior to the date fixed for the hearing the company filed its bill, which upon motion was dismissed.

It is manifest from a reading of the Federal Water Power Act that it was the intent of Congress to clothe the Power Commission with comprehensive powers. To that Commission is intrusted the duty and responsibility of administering the provisions of the act. The grant of a license under the act is a gratuity, a privilege from the sovereign, and can only be justified on the theory of the benefit to inure to the public. The act, therefore, should receive "a practical construction, and one which will enable the Commission to perform the duties required of it by Congress." Int. Com. Comm. v. Goodrich Transit Co., 224 U. S. 194, 213, 32 S. Ct. 436, 440, 56 L. Ed. 729. In Susquehanna Power Co. v. Tax Comm. (No. 1), 283 U. S. 291, 293, 51 S. Ct. 434, 435, 75 L. Ed. 1042, the court, having this act under consideration, said: "The Commission is given extensive regulatory and supervisory powers over the construction, maintenance, operation, financing, rates, and service of licensed projects, and over the system of accounting maintained by licensees." It is, we think, apparent that, if the commission is intelligently to exercise such extensive regulatory and supervisory powers, the authority to determine the net investment of any project is absolutely necessary. Such a determination is purely administrative in character, and is not to be confused with the judicial determination which takes place for another purpose at the end of the license period. Kansas City So. R. Co. v. United States, 231 U. S. 423, 443, 34 S. Ct. 125, 58 L. Ed. 296, 52 L. R. A. (N. S.) 1; United States v. Grimaud, 220 U. S. 506, 31 S. Ct. 480, 55 L. Ed. 563.

The act expressly requires the licensee to file a statement showing the cost of the project, "in order to aid the commission in determining the net investment of a licensee in any project." Section 4 (a). Appellant contends that this means a determination twenty or fifty years deferred. In our view, such an interpretation of the statute is unreasonable, for during the twenty or fifty years the regulatory powers of the commission must be constantly exercised.

Another section of the statute requires the licensee to submit to the commission from time to time statements and reports, inter alia, as to net investment and cost of project; and also requires such licensee to make adequate provision "for currently determining said costs and other facts." Section 4 (f). Appellant contends that it is the licensee and not the commission who must be ready currently to determine such cost. This contention does not appeal to us. The statute requires the licensee to submit to the commission statements covering net investment and cost of the project and we think it plain that the purpose of requiring the licensee to make provision for currently determining the cost is to enable the commission as the administrative body, not the licensee, currently to make such determination. Under section 16 the United States is authorized to take over a project in time of war by paying compensation fixed by the commission "upon the basis of a reasonable profit in time of peace." Un-

864

der the act reasonable profit depends upon original cost. Under sections 19 and 20 (16 USCA §§ 812, 813) the commission is authorized to fix rates under the various conditions and circumstances recited in those sections, and the basis of these rates under the provisions of the act is the original cost of the project. The other provisions of the act are in harmony with those here noticed.

It follows, therefore, that the commission, in making the investigation to ascertain the original cost and net investment of the Clarion Company in the Piney project, was acting within its jurisdiction, and hence, is not subject to the control of the court.

Decree affirmed.

Affirmed.