## LOUISVILLE GAS & ELECTRIC CO. v. FEDERAL POWER COMMISSION.
### No. 8564.

Circuit Court of Appeals, Sixth Circuit.

June 29, 1942.

Charles W. Milner, of Louisville, Ky. (George W. Norton, Jr., and B. Hudson Milner, both of Louisville, Ky., A. Louis Flynn and Helmer Hansen, both of Chicago, Ill., on the brief), for petitioner.

Charles V. Shannon, of Washington, D. C. (Richard J. Connor, Wallace H. Walker, Louis W. McKernan, and Stanley M. Morley, all of Washington, D. C., on the brief), for respondent.

Before HICKS, SIMONS, and McALLISTER, Circuit Judges.

SIMONS, Circuit Judge.

The petitioner now considering itself aggrieved by three orders of the respondent, dated respectively October 31, 1933, September 30, 1937, and October 31, 1939, in view of the direction in the last order, petitions this court to annul and set them all aside. Preliminarily, or as an alternative it moves for leave to adduce additional evidence, and impliedly that the controversy be remanded to the Power Commission for the purpose of considering such evidence. The respondent, alleging that the court is without jurisdiction to re-

view the 1933 and 1937 orders, on the ground that the petitioner did not apply for a rehearing on the second, or seek a court review of either, but, on the contrary, purported to comply, moves to dismiss the petition in respect to the review sought of the first and second orders.

The petitioner is a Kentucky corporation engaged in the electric and gas business in the city of Louisville. In 1925 it acquired, through an affiliate, the Louisville Hydro Electric Company, a license issued by the respondent for Project 289. This project is located in the Ohio River at Louisville, and the Ohio being a navigable stream, construction therein was permissible only under license of the respondent in pursuance of the provisions of the Federal Water Power Act of June 10, 1920, 16 U.S.C.A. § 791 et seq. The Louisville Hydro Electric Company at the time it applied for license, and during construction of the project, was affiliated with the petitioner. Subsequently it was dissolved and the project and license were transferred to the petitioner with the written approval of the Commission and subject to certain conditions, on October 17, 1934. Following completion of the project, Hydro, as required by § 4 of the Act and Article 17 of the license, filed a "verified initial cost statement" in which it claimed $7,829,738.72 to be its actual legitimate original cost as of November 30, 1929.

The Commission made a detailed audit of all the data in support of the claim, and following a preliminary staff report thereon, and a hearing upon Hydro's protest before the full Commission, rendered an opinion and entered its first order determining the petitioner's original cost to be $6,996,093.52, thus disallowing as part of original cost various items totaling $833,645.20 claimed by Hydro, granting it leave, however, to submit additional evidence with respect to some of the disallowed items. The order is that of October 31, 1933, the first of those here sought to be reviewed, and required the licensee to establish and maintain control ledger sheets or accounts with reference to the project, beginning with the entry of the amount found by the Commission as its actual legitimate original cost, and to establish and maintain subsidiary ledger sheets, accounts, or records showing and substantiating all entries in the control account and classifying the total for fixed capital in appropriate detail and in accordance with the Commission's rules and regulations. The petitioner applied for a rehearing with respect to some of the disallowed items, and it being granted, the Commission entered its second order, that of September 30, 1937, increasing its determination of actual legitimate original cost to $7,218,188.67 and disallowing $611,550.05 of the amount claimed by the company as cost. The petitioner was again directed to conform its books and accounts accordingly. No application was made for rehearing on this second determination, and no review was sought of the 1933 order or of its modification by the 1937 order.

The petitioner undertook to comply with the order of September 30, 1937, and on September 12, 1938, advised the Commission that it had, by proper journal entries, and in conformity with its terms, adjusted its books to show the Commission's determination of actual original cost after transferring a minor item to a non-project account.

On April 4, 1939, the Commission directed the petitioner to show cause why the amount of the disallowed items should not be transferred as a charge against the company's appropriate surplus account in accordance with its orders of October 31, 1933, and September 30, 1937, and the provisions of the uniform system of accounts prescribed for public utilities and licensees. To this the company made response denying that it had failed to comply with the Commission's orders, and denying the authority of the Commission to require that the disallowed items be charged to surplus It supported its denial by argument, but neither requested nor suggested further hearing nor indicated that it desired to introduce testimony. On October 31, 1939, the Commission adopted its third order, and finding that no cause had been shown as required, directed the petitioner to write off the sum of $601,937.57[1] against its earned surplus account. The petitioner applied for rehearing on December 4, 1939. This was automatically denied by the Commission's failure to act thereon for a period of 30 days, under the provisions of § 313(a) of the Act, 16 U.S.C.A. § 825l(a). The present petition for review to this court followed.

---

[1] The difference between this and the earlier figure represents the item transferred to a non-project account.

■■ The first question presented relates to the scope of the review and is raised by the Commission's motion to dismiss the petition insofar as it prays review of the 1933 and 1937 orders. Section 313(a) precludes review of an order of the Commission unless the petitioner has made application for a rehearing, and § 313(b) limits the time of review to the sixty-day period following the entry of an order upon an application for rehearing. The Commission therefore contends that since there was no petition for rehearing filed in respect to the 1937 order, and no timely court review sought of either the 1933 or 1937 orders, we are without jurisdiction to consider them. The petitioner responds that the first two orders of the Commission did not adversely affect it and would not affect it unless and until the determination contained therein was in some way used to its detriment, and that the petitioner therefore was not aggrieved and so had no right to appeal. Asserting that the Commission had jurisdiction to determine the net investment of a licensed project for specific purposes only, and since actual legitimate original cost was but one of the factors to be considered in arriving at net investment, and the time had not arisen when the Commission could use its determination for any purpose, it had, therefore, no objection to complying with the first two orders and entering the amounts specified in them as bookkeeping entries even though it believed that the determinations were erroneous. It construed them as mere findings, directing no determinative action affecting its interests. It was only when the third order was entered which, for the first time, specifically directed the disallowed amounts to be charged to surplus, that the petitioner considered itself aggrieved and so entitled to a court review. It now contends that all questions relative to the Commission's adjudication of actual legitimate original cost may here be reviewed as well as the authority of the Commission to direct disallowed items to be charged to surplus.

In support of its contention that the first two orders of the Commission were not appealable, it points to the limited statutory purposes of the Commission's determination of actual legitimate original cost. Section 803(d), 16 U.S.C.A. provides that "After the first twenty years of operation, out of surplus earned thereafter, if any, accumulated in excess of a specified reasonable rate of return upon the net invest-

ment of a licensee in any project or projects under license, the licensee shall establish and maintain amortization reserves, * * *." Since Project 289 was put into operation in 1928, the jurisdiction of the Commission to use its finding for the purpose of determining amortization reserves does not apply until 1948. Section 807 gives the United States the right to recapture or purchase the licensed project at the expiration of the license upon payment of an amount equal to the net investment of the licensee, but not to exceed the fair value of the project, and net investment is to be determined by agreement between the Commission and the licensee, or, in case agreement fails, by proceedings in equity instituted by the United States. The license having been issued in 1925 for a term of fifty years, the government cannot purchase or recapture the property until 1975, so that determination of original cost by the Commission upon completion of the project is no more than preservation of evidence useful only when the license has expired. A third purpose for the utilization of the Commission's findings is indicated by § 809 which provides that when, in the opinion of the President, the safety of the United States demands that it take over a licensed project, the United States has such right upon payment of just and fair compensation for the use of the property. So it is argued that the Commission's finding of original cost is again merely evidence of one element to be considered in determining what this compensation shall be. Therefore, it is its view that since the Commission's first two orders were mere findings of cost which would materially affect the interests of the petitioner only when the time arrived at which they would be given effect for amortization purposes, recapture by the government, or the taking of the property in a national emergency, the petitioner was not aggrieved and had no right of appeal. United States v. Los Angeles & S. L. R. Co., 273 U.S. 299, 47 S.Ct. 413, 71 L.Ed. 651; Rochester Telephone Corp. v. United States, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147.

If this contention, in any respect, be valid, it overlooks some of the express provisions of the Act and the clear implications of other provisions. By § 10(e), § 803(e), 16 U.S.C.A., excessive profits of a licensee may be expropriated to the government by increasing the annual charges paid by it. It would seem, therefore, that

a determination of net investment of which original cost is the basic element, should be available to the Commission, for the application of this provision, from the very beginning and affects materially the interests of the licensee. It is not without importance that the Act (§ 797 16 U.S.C.A.) requires the licensee to file with the Commission, data bearing on actual legitimate original cost of construction within a reasonable period of time to be fixed by the Commission after the construction of the original project. There is implicit in this provision the need of an early determination to proper enforcement of the Act, and the exercise of the regulatory powers of the Commission. While adjudication may not in some respects be applicable until after the lapse of years, in other aspects it may instantly become of highest importance. This must be so when the safety of the United States requires. Bitter experience has demonstrated that threats to national safety do not always proclaim their coming in advance, and the need for use by the government of power projects may suddenly appear. In this situation choice between one project and another immediately and peremptorily required, may rest upon comparative adjudications of cost of construction or net investment.

 In Federal Power Commission v. Metropolitan Edison Co., 304 U.S. 375, 384, 58 S.Ct. 963, 967, 82 L.Ed. 1408, the Supreme Court had occasion to consider the nature of orders of the Commission which are subject to review under § 313(d), and concluded, "the provision for review thus relates to orders of a definitive character dealing with the merits of a proceeding before the Commission and resulting from a hearing upon evidence and supported by findings appropriate to the case." Mere preliminary or procedural orders are not within statutes providing for review by the Circuit Court of Appeals, and so attempts to enjoin administrative hearings and obtain judicial relief before the prescribed administrative remedy has been exhausted, have been held to be at war with long settled rules of judicial administration. The Commission's order in the Edison case, however, merely fixed a date for hearing, required respondents to appear, and produce information and documents. It was no more than a notice. The first orders of the Commission in the present case, however, were final adjudications of an essential element in controversy, and directed affirmative action of an important nature to be taken by the petitioner.

In the Rochester Telephone case, supra, the Communications Commission had declared the Rochester company to be a corporation subject to its jurisdiction, and ordered it to comply with previous general orders requiring telephone companies to furnish detailed information as to their affairs. It was there held that the order was not a mere abstract declaration regarding status, nor a stage in an incomplete process of administrative adjudication. The contested order necessarily and immediately carried direction of obedience to previously formulated mandatory orders addressed generally to all carriers amenable to the Commission's authority, and so the order was held to be reviewable. So here the direction of the Commission that the licensee establish accounts showing a debit balance in its fixed capital assets was an affirmative, determinative order directing action, was more than a mere finding, and its mandate entails more than mere preservation of evidence. Compare East Ohio Gas Co. v. Federal Power Commission, 6 Cir., 115 F.2d 385.

So far we have not considered the Commission's argument hereafter to be dealt with, that there is implicit in the first orders of the Commission a direction that disallowed items be charged to surplus because only by such charge may there be conformity with sound accounting practice. If there be validity to this argument the petitioner has, as will later be seen, completely demonstrated its grievance, and so the reviewability of the first orders. Without considering this view, however, in respect to the present phase of the case, we conclude that the first orders of the Commission were reviewable under § 313, that no review having been sought and the time for such review having expired, we are without jurisdiction to entertain a challenge either to the finding of the Commission upon actual legitimate original cost of Project 289, or to the Commission's direction for the incorporation of the result in the books and records of the petitioner, and that the Commission's motion to dismiss the petition insofar as it prays for review of the 1933 and 1937 orders, must be granted.

We arrive, therefore, at a consideration of the petition to review the 1939 order of the Commission which the petitioner desig-

132

nates as the principal order appealed from. Its challenge is based on many grounds. It demonstrates its grievance, in the first place, resulting from the requirement that it charge disallowed items to surplus, by asserting that such charge will affect its credit, the market price of its securities, and the interest that it might be required to pay for bank loans. In addition, such charge will result in understating the cost of its property to it, may seriously affect a purchaser's opinion of the value of its security, and deprive it of reserves which may become necessary to take care of unforeseen losses. Its grievance thus asserted, it then assails the order as being beyond the scope of the Commission's authority under the Act. It asserts that the Commission has no jurisdiction over its rates, services, or securities, nor over its accounts and accounting system, and finally, that the order is void because it constitutes confiscation of its property, and likewise void for want of due process in failure to grant a hearing upon its petition to the Commission for rehearing.

In urging that the Commission has no jurisdiction over rates, services, or securities, the petitioner points to § 19 of the 1920 Act, 16 U.S.C.A. § 812, which limits jurisdiction over rates, services, or securities, to those utilities which are not being regulated by a state commission, and provides that the jurisdiction of the Federal Power Commission shall cease and determine as soon as the state has provided a commission or other authority for the regulation and control of these matters. The petitioner, it asserts, is not within the limitation because Kentucky has such a commission which is actually regulating its rates, services, and securities, as well as its accounting system. It points also to the fact that the 1920 Act (16 U.S.C.A. § 813), limits jurisdiction over power to that which enters into interstate or foreign commerce, and to situations where either there are no state commissions or the state commissions of respective states are unable to agree. The Act further provides that determinations of value are to be governed by the same procedure and practice as is used with regard to railroads, and so such value is not limited when considered as a base for rate-making to original cost or net investment. Rates must be such as to allow a return on fair value, in the determination of which there must be included all elements of value recognized by the law of the land for rate-mak-

ing purposes. Thus the conclusion is urged upon us that, since the Commission's determination of actual legitimate original cost or net investment, was but for the purpose of setting up amortization reserves after 1948, the purchase or recapture by the government after 1975, or an emergency taking-over of the petitioner's property, there is no jurisdiction in the Commission over rates, services, or securities of a purely intra-state utility because the Commission has no authority in such matters. Finally, it is said that while the 1920 Act gave the Commission jurisdiction to prescribe a system of accounts for licensees, 16 U.S.C.A. § 797, this provision was eliminated from the 1920 Act when it was amended in 1935.

Since Kentucky has a commission which regulates rates and services, it may be conceded that the Federal Power Commission has no present authority in this respect. It does not, however, follow that the Commission is without jurisdiction to regulate and control the petitioner's system of accounts and to require it to make effective its finding of actual original cost or net investment. The petitioner, in respect to Project 289, is a licensee of the government. Questions of value, for purposes of amortization, recapture, or taking over, are not those which apply for rate-making purposes to utilities stemming from private investment in pre-regulatory periods or to those initiated by private enterprise without contribution of necessarily vital power by government conditioned upon compliance with the terms of the grant. As pointed out in United States v. Appalachian Electric Power Co., 311 U.S. 377, 424, 61 S.Ct. 291, 307, 83 L. Ed. 243, "Possessing this plenary power to exclude structures from navigable waters and dominion over flowage and its product, energy, the United States may make the erection or maintenance of a structure in a navigable water dependent upon a license." The subsidiary of the petitioner sought and obtained such license, and the Act (§ 301, 16 U.S.C.A. § 825) requires every licensee to keep its accounts in the manner prescribed by the Commission. The license incorporated an obligation to do so. Moreover, the petitioner, in taking over the license from its subsidiary, could acquire it only with the consent and approval of the Commission, and such approval was conditioned upon the petitioner's express agreement to comply with the Commis-

sion's accounting requirements under § 8 of the Act, 16 U.S.C.A. § 801.

 While § 4(f) of the 1920 Act was repealed by the 1935 Act, 16 U.S.C.A. § 797(f) note, the Commission's authority over the accounting system of a licensee did not disappear. Section 301(a) of the 1935 Act provides that every licensee and public utility shall make, keep, and preserve for such periods such accounts, records of cost, accounting procedures, etc., as the Commission may, by rules and regulations, prescribe. Furthermore, the provision that nothing in the Act should relieve a public utility from keeping such accounts as are required by the laws of the state, impliedly, if not expressly, discloses a purpose that the Commission shall prescribe such accounting system, notwithstanding that the state has required a like or a different system of accounts. It may be granted that acceptance of a license in the first instance, and of the Commission's later consent to its transfer, both granted upon condition that the licensee shall abide by the orders of the Commission in respect to accounting, does not oblige the petitioner to comply with arbitrary or capricious orders of the Commission, or such as are clearly beyond the scope of its authority. It does not follow, however, that an order of the Commission which makes available for all purposes, both present and prospective, the actual original cost of the licensed project or the licensee's net investment therein, is arbitrary or beyond the scope of the Commission's authority. Nor does it follow that the Commission may not give consideration to the broad general purposes of the Act which clearly contemplated not only the protection of the public interest generally, but likewise the interest of the consumer and the investor.

 While the provisions for the amortization, recapture, or taking over of the licensed project, establish the basis for exhaustion of value or compensation to the utility of its net investment therein, it is clear, from § 3(13) of the Act, 16 U.S.C.A. § 796(13), that net investment is but actual original cost extended to the time of expropriation by fitting adjustments. These adjustments comprise the addition of betterments, and the elimination of surplus, depreciation, and amortization or other reserves set up out of earnings in excess of a fair return or additions and betterments paid for out of excess earnings. In other words, if the construction project were taken over immediately after completion, actual legitimate cost and net investment would be identical. If taken over after a period of operation, the licensee is entitled to a fair return on net investment, but no more. So it seems clear that it was the purpose of the Act that excessive earnings should neither be preserved nor concealed in surplus, sinking fund, or other reserves. Otherwise there would be no point in providing that the data, with respect to actual original cost, be furnished and acted upon within a reasonable time after construction is completed.

 The argument that the wiping out of a large part of the petitioner's surplus will result in disastrous consequences to the value of its securities, necessarily concedes that a like result will follow whenever, under the recapture or emergency provisions, the finding of net investment of the licensee in the project is finally made effective. Indeed, the consequences may then be much more serious, for the investing public will then be lulled into a false sense of security by the passing of time. It therefore is not arbitrary nor beyond the Commission's scope of authority to require that the value of capital assets for dividend or security valuation purposes, shall be the same as for expropriation or recapture purposes, and be adequately disclosed, from the beginning, upon the books of the petitioner. As one court expressed it, disallowed items should not be permitted "to assume the nature of vested interests." Clarion River Power Co. v. Hurley, 59 Wash.Law Rep. 106, 108.

 The view we take of the Act in respect to the scope of the Commission's authority to direct the charge to surplus of disallowed cost items, is substantially that taken by other courts which have dealt with the same or related problems. Clarion River Power Co. v. Smith, 61 App.D.C. 186, 59 F.2d 861, certiorari denied 287 U.S. 639, 53 S.Ct. 88, 77 L.Ed. 553; Alabama Power Co. v. McNinch, 68 App.D.C. 132, 94 F.2d 601; Northern States Power Co. v. Federal Power Commission, 7 Cir., 118 F.2d 141; Alabama Power Co. v. Federal Power Commission, App.D.C., 128 F.2d 280, decided March 30, 1942. The effort to differentiate these cases in the respect herein considered, is wanting in persuasiveness. In general, it has been held to be entirely reasonable for the Commission, in order properly to perform its duties, to direct elimination of items found not to

constitute real assets and to establish uniform accounting. This is the necessary implication of the Act. Nor does this authority relieve the licensee from keeping accounts under authority of state law. The Commission and the state regulatory body each acts within its own field. Northern States Power Co. v. Federal Power Commission, supra.

Clearly, the required charge to surplus is in no sense a confiscation of the petitioner's property when we keep in mind that what is involved is a licensed project not only subject to accepted conditions of amortization, recapture, or taking over, but subject also to revocation of the license if certain of its conditions are not complied with. It was assumed, though without decision, in United States v. Appalachian Electric Power Co., supra [311 U.S. 377, 61 S.Ct. 309, 83 L.Ed. 243], that "by compulsion of the method of acquisition provided in section 14 of the Power Act and the tendered license, these riparian rights may pass to the United States for less than their value. In our view this 'is the price which (respondents) must pay to secure the right to maintain their dam.'" This is from the conclusion reached in Fox River Paper Co. v. Railroad Commission, 274 U.S. 651, 47 S.Ct. 669, 71 L.Ed. 1279, which the court now declares is decisive on the issue of confiscation.

Finally, there is no merit to the contention that the petitioner has been denied due process of law. The 1939 order was but a clarification of the earlier orders. The petitioner was given full opportunity to show cause why it should not be entered. It had already been advised of a judicial determination in Clarion River Power Co. v. Hurley, supra, that the scope of the Commission's authority included power to direct that disallowed items of cost should not be retained in capital accounts. It should have understood that the finding of the Commission must have been intended by the Act as something more than mere futility, ineffective upon the petitioner's books of account except to preserve evidence for use in a far distant future. The petitioner made its response to the order to show cause. It must be assumed that the response was as full and complete as it considered possible or appropriate. It requested no opportunity to present evidence, and the factors that had led to the original orders had already been fully considered. The Fifth Amendment guarantees no particular form of procedure, N. L. R. B. v. Mackay Radio & Telegraph Co., 304 U.S. 333, 351, 58 S.Ct. 904, 82 L.Ed. 1381, and in general there is no warrant in assuming a failure to grant a fair hearing by the lack of a trial in the strict or formal sense. ·The "inquiry [should be] so fitted in its range to the needs of the occasion." Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 820, 79 L.Ed. 1566. Such inquiry was made and full opportunity was given to the petitioner to support its position.

The petitioner's motion for leave to adduce additional testimony must be overruled because of its failure to qualify under § 825*l*(b) of the Act which requires that it shall show, to the satisfaction of the court, that the additional evidence is material, and that there were reasonable grounds for failure to adduce it in proceedings before the Commission. The evidence now offered concerns itself mainly with the legislative history of § 791a et seq., and data in respect to the petitioner's affairs and relations with the Public Service Commission of Kentucky. As to the first we assume authority judicially to notice it, and have done so. But as to both, even were the offer timely, it does not clearly appear that the new evidence would compel or persuade to a contrary result, in view of the statutory mandate that the findings of the Commission as to facts, if supported by substantial evidence, shall be conclusive. In any event, no good reason appears why this evidence could not earlier have been submitted to the Commission.

The petition is dismissed insofar as it prays review of the first and second orders of the Commission, and the 1939 order is affirmed.