CNG TRANSMISSION CORPORATION, Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent.

No. 93–1634.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 17, 1994.

Decided Dec. 9, 1994.

Kevin J. Lipson, Washington, DC, argued the cause for petitioner. With him on the briefs were Richard T. Saas, Henry E. Brown and Mark G. Magnuson, Washington, DC. Charles C. Thebaud, Jr., Washington, DC, entered an appearance for appellant.

Joel M. Cockrell, Atty., F.E.R.C., Washington, DC, argued the cause for respondent. With him on the briefs were Jerome M. Feit, Sol., and Joseph S. Davies, Jr., Deputy Sol., F.E.R.C., Washington, DC.

Before EDWARDS, Chief Judge, WALD and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

CNG Transmission Corporation ("CNG") petitions for review of an order of the Federal Energy Regulatory Commission ("FERC" or "Commission") denying CNG's request to treat a loss of natural gas from its Sabinsville, Pennsylvania storage facility as a regulatory asset, pending FERC's decision whether to allow CNG to recover the loss in its rates. We recognize CNG as an aggrieved party for purposes of judicial review under the Natural Gas Act ("NGA"), but deny CNG's petition for review on the merits.

## I. BACKGROUND

CNG Transmission Corp., a wholly-owned subsidiary of Consolidated Natural Gas Company, is an interstate natural gas pipeline company with transmission facilities in West Virginia, Virginia, Maryland, Pennsylvania, Ohio, and New York. One of its assets is the Sabinsville storage facility, an underground natural gas storage field developed from a depleted natural gas reservoir in Tioga County, Pennsylvania. Like other storage fields, the Sabinsville facility normally loses some gas, usually about %0 of 1% of its total capacity in the course of a year. This normal annual loss is considered an ordinary part of the company's cost of service, and CNG recovers the value of the lost gas either in its base rates or through separate purchased gas adjustment ("PGA") charges. In 1991, however, CNG determined that over a 15-year period from 1972 through 1986, it had incurred a loss of 3.3 billion cubic feet ("Bcf") from its gas reserves at Sabinsville in addition to the expected "normal" loss of 2 Bcf over the same period. On November 1, 1991, CNG sought authority from FERC's Chief Accountant to defer this loss, which it valued at $8,984,255,[1] by recording it as a credit (or "regulatory asset") in Account No. 182.1 ("Extraordinary property losses") until FERC could determine in the course of a section 4 rate proceeding whether CNG is entitled to recoup the loss through its future rates.

In a letter order dated January 22, 1992, FERC's Chief Accountant denied CNG's application, stating that CNG could treat the loss as a "regulatory asset" only if there were a "reasonable assurance" that the Commission would allow the loss to be recovered in a future rate proceeding. In this case, the Chief Accountant said, "doubt exists as to the ultimate recoverability of these gas losses" because CNG's failure to identify the losses prior to 1991 despite semi-annual inventories over the 15-year period in which the losses occurred raised questions about the timeliness of CNG's application and the soundness of its inventory measurement methods and reporting practices. The Chief Accountant specifically questioned CNG's failure to include any part of this gas loss in its previous requests for rate adjustments when it must have known the loss was occurring, despite FERC regulations requiring that adjustments for gas losses be made in a "timely manner." The Chief Accountant therefore directed CNG to record the loss in Account No. 823, "Gas losses," 18 C.F.R. Part 201, Account 823, its standard gas loss account

---

1. This value was computed using the 1990 LIFO (last in, first out method of accounting) storage gas layer rate. Subsequent recalculation based on the slightly lower 1991 rate, offset by $618,- 393.03, the amount remaining in CNG's Account No. 228.43 ("Reserve for future gas losses"), reduced the loss to $7,139,088.

where the loss is treated as a current expense. The Chief Accountant emphasized, however, that this interim accounting treatment "does not preclude CNG from seeking recovery of these losses in a future rate filing." The Chief Accountant issued this ruling without a formal evidentiary hearing, but after CNG had submitted information supporting its application and responded to FERC staff requests for additional information.

CNG thereupon filed a request for rehearing before the Commission, contending that the Chief Accountant's order was inconsistent with FERC's past treatment of similar gas losses; that the order was based on an insufficient evidentiary record; and that the company was entitled to a full evidentiary hearing to explain why it had been unable to detect and report the loss before 1991. On July 22, 1993, the Commission issued an order denying CNG's request for rehearing, in which the Commission upheld the Chief Accountant's determination. *CNG Transmission Corp.*, 64 F.E.R.C. ¶ 61,110 (1993). CNG subsequently initiated a rate proceeding pursuant to Section 4 of the NGA, seeking, among other things, a rate adjustment to recoup the gas loss at Sabinsville. CNG now petitions for review of FERC's July 22, 1993 order.

## II. ANALYSIS

This case presents three questions: (1) Is CNG an "aggrieved party" for purposes of judicial review under the Natural Gas Act? (2) Did the Natural Gas Act, FERC's own regulations, and the Fifth Amendment require FERC to hold a formal evidentiary hearing before determining whether CNG was entitled to its requested accounting treatment? (3) Did FERC act arbitrarily, capriciously, and without adequate support in the record when it denied CNG's requested accounting treatment?

### A. "Aggrieved Party"

 As a threshold matter, FERC contends that CNG is not entitled to judicial review because it is not an "aggrieved party" within the meaning of § 19(b) of the Natural Gas Act, which provides that "[a]ny party to

a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain review of such order in the United States Court of Appeals...." 15 U.S.C. § 717r(b) (1988). Judicial review is limited to "orders of definitive impact, where judicial abstention would result in irreparable injury to a party." *Papago Tribal Utility Auth. v. FERC*, 628 F.2d 235, 238 (D.C.Cir.), *cert. denied*, 449 U.S. 1061, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980). "To show aggrievement, a plaintiff must allege facts sufficient to prove the existence of a 'concrete, perceptible harm of a real, non-speculative nature.'" *North Carolina Util. Comm. v. FERC*, 653 F.2d 655, 662 (D.C.Cir. 1981) (quoting *Public Citizen v. Lockheed Aircraft Corp.*, 565 F.2d 708, 716 (D.C.Cir. 1977)).

FERC contends that its interim accounting treatment of CNG's gas loss is "merely a formal bookkeeping requirement" and does not have any immediate effect on CNG's rates, which will be established in a separate rate proceeding. Respondent's Brief at 13. CNG replies that whether or not it eventually recoups this loss through its rates, in the meantime it has suffered a "concrete, perceptible harm of a real, non-speculative nature" insofar as it has been forced to take a $7.1 million write-off from its 1993 income, affecting "company value, investor return, and thus, the ability to attract capital," and "depriv[ing] CNG of earnings that may be necessary to pay dividends, make capital expenditures, and accommodate other unforeseen needs...." Petitioner's Reply Brief at 2–3. In support of its position, CNG cites numerous cases where courts have reviewed FERC (or Federal Power Commission) accounting orders which required utilities to write off losses, including several squarely holding that adverse accounting determinations may constitute "aggrievement." The authorities cited by CNG, however, all involve final, permanent determinations of accounting treatment, not interim treatment like that involved in the present case. *See, e.g., Louisville Gas & Electric Co. v. FPC*, 129 F.2d 126, 130–31 (6th Cir.1942) (reviewing final FPC orders disallowing certain costs for purposes of calculating utility's original net

investment), *cert. denied,* 318 U.S. 761, 63 S.Ct. 559, 87 L.Ed. 1133 (1943); *Alabama Power Co. v. FPC,* 128 F.2d 280, 284 & n. 4, 285, 290–91 (D.C.Cir.) (same), *cert. denied,* 317 U.S. 652, 63 S.Ct. 48, 87 L.Ed. 525 (1942). Nonetheless, we cannot agree with FERC's assertion that the financial consequences of this interim accounting order do not rise to the level of "aggrievement." As a direct result of FERC's decision, CNG is required to record a $7.1 million loss in its 1993 financial statements, adversely affecting the company's bottom line, reducing the earnings available for dividend payments and investment, and damaging the company's standing in the financial markets by reducing company value and making it more difficult (and more costly) to raise capital. We conclude therefore that CNG has suffered a sufficiently concrete and non-speculative injury to be considered an "aggrieved party" for purposes of judicial review under the NGA.

## B. *Hearing Requirements*

■ CNG contends that it was denied adequate notice and opportunity to be heard, as required by statute and FERC's own regulations. Section 8(a) of the NGA provides that "[t]he Commission, after *notice and opportunity for hearing,* may determine by order the accounts in which particular outlays or receipts shall be entered, charged, or credited." 15 U.S.C. § 717g(a) (1988) (emphasis added). CNG claims it received no notice and had no opportunity to adduce evidence to support its requested accounting treatment.

■ As we have held on numerous occasions, the NGA does not require a formal evidentiary hearing in all circumstances. A "paper hearing" of the type used here may be sufficient to meet the hearing requirements of the NGA "where ... the paper record provides a sufficient basis for resolv-

ing the relevant issues." *Moreau v. FERC,* 982 F.2d 556, 568 (D.C.Cir.1993). *See also Cities of Batavia, et al. v. FERC,* 672 F.2d 64, 91 (D.C.Cir.1982). The question remains whether the notice and opportunity to present evidence afforded CNG were adequate to provide a full airing of the relevant issues.

Notice was provided in the first instance by the Commission's own regulation establishing Account No. 182.1, which provides that an application to use the account "shall be accompanied by a statement giving a *complete explanation*" (emphasis added) of the reasons for the proposed use of the account, "and other pertinent information." 18 C.F.R. Part 201, Account 182.1B (1994). As FERC points out, this regulation clearly invited CNG to support its application by providing any and all information it deemed relevant to the determination. Second, after CNG submitted its application, the Chief Accountant's staff on two occasions requested additional information, and CNG admits it provided supplemental information in response to these requests. Third, the Chief Accountant's rejection of CNG's request provided clear notice that CNG's submissions until that point had been unpersuasive; CNG then had an opportunity to adduce additional evidence in its petition to the Commission for rehearing. *See, e.g., General Motors Corp. v. FERC,* 656 F.2d 791, 794 (D.C.Cir.1981). Under the circumstances, we conclude that CNG had ample notice and opportunity to be heard.

■ Nor are we persuaded by CNG's argument that another FERC regulation, which under certain circumstances gives the *utility* the option of choosing between an informal paper hearing and a formal evidentiary hearing, 18 C.F.R. §§ 158.1–158.8 (1994), applies here.[2] By its terms, that regulation applies when the Commission has

---

2. CNG did not explicitly make this argument in its petition for rehearing, and thus arguably is barred from raising it for the first time in its petition for review. The judicial review provision of the NGA expressly provides that "[n]o objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is a reasonable ground for failure to do so." 15

U.S.C. § 717r(b) (1988). CNG does argue here, however, that the regulations in 18 C.F.R. §§ 158.1–158.8 merely implement the statutory hearing requirements of § 8(a) of the NGA. On the most generous reading, then, CNG preserved this argument when it argued in a supplement to its petition for rehearing that it was entitled by the NGA to a formal evidentiary hearing. *See* Supplement to Pending Request for Rehearing, Joint Appendix ("J.A.") 76.

given notice that the regulated company's accounting or recordkeeping is "deficient" because its "accounts ... books or records ... are not being kept and maintained as required" or because its "statements or reports ... are not in proper form...."[3] FERC's reasonable interpretation is that this regulation does not apply to an application to use Account No. 182.1, of the kind CNG made here. FERC did not find that CNG had kept its accounts, records, or statements improperly, nor did it issue a notice of deficiency as specified in § 158.1; instead, CNG merely requested and FERC denied a proposed use of Account No. 182.1, a circumstance outside the scope of these regulations. Nor is the difference merely a question of the timing of the accounting entry, so that a regulated party could trigger a formal hearing requirement under §§ 158.1–158.8 by unilaterally making an accounting entry in Account No. 182.1 rather than seeking prior approval from FERC. Unlike most other accounts, Account No. 182.1 may be used *only* upon prior approval by FERC; the regulation establishing this account provides that it is available only "[w]hen authorized or directed by the Commission" and upon "[a]pplication to the Commission for permission" to enter any particular item in the account. 18 C.F.R. Part 201, Account 182.1, Extraordinary property losses (1994).

Although CNG insisted at oral argument that the hearing requirements of §§ 158.1–158.8 apply whenever FERC makes "an examination of any statement or report submitted by" a regulated company, CNG has plainly misread the provision.[4] And even if CNG's reading of the regulation *were* plausible, FERC's interpretation of its own regulation as inapplicable here is "not plainly erroneous or inconsistent with the regulation, and is thus controlling," *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359, 109 S.Ct. 1835, 1850, 104 L.Ed.2d 351 (1989) (internal citation and quotation omitted).

CNG further contends that "no reason exists" to treat questions of *proposed* accounting treatment under Account No. 182.1 differently from accounting errors or deficiencies of the type explicitly covered by 18 C.F.R. §§ 158.1–158.8. Petitioner's Brief at 14. Perhaps sound policy arguments can be offered in support of CNG's position, but that is a policy judgment for FERC—not for CNG or this court—to make in the first instance. Our role is limited to determining whether a formal hearing was required by law. Because FERC reasonably interprets 18 C.F.R. §§ 158.1–158.8 not to apply in the circumstances of this case, we hold that those provisions did not afford CNG the right to elect a formal hearing procedure.

■ Finally CNG maintains that FERC violated its Fifth Amendment rights by depriving it of a protectible property interest without due process of law. The property interest implicated here, CNG says, is a particular accounting determination to which it was statutorily entitled. Not every economic interest or unilateral expectation of economic gain rises to the level of a protectible property right for purposes of due process analysis. *Board of Regents v. Roth*, 408 U.S. 564, 577,

---

3. The full text is as follows:

§ 158.1 *Notice of deficiencies.*

*If,* as the result of an examination by a representative of the Commission of the accounts of a person subject to the Act and to the Commission's accounting requirements, or of an examination of any statement or report submitted by such person, it appears that the *accounts,* or any *books or records* pertaining to or in support thereof, *are not being kept and maintained as required* by the Commission, or that the *statements or reports* prepared and submitted *are not in proper form,* the *failure or deficiency* will be called to the attention of such person either formally or informally as the circumstances appear to warrant.

18 C.F.R. § 158.1 (1994) (emphasis added). Subsequent sections provide that, upon receipt of such notice of deficiency, the regulated company may elect either a formal or informal hearing procedure. FERC offers a straightforward and reasonable reading of the text of this regulation: it applies if (and only if) FERC finds that a regulated party's accounts, books, or records are not being kept as required, or its statements or reports are not in proper form.

4. CNG's reading is correct only under the special circumstances outlined in the text: FERC's "examination of [a] ... statement" submitted by a regulated company can trigger the hearing requirements of §§ 158.1–158.8, *if* based upon that examination FERC finds a deficiency in the company's accounts, records, or statements and gives notice thereof. As we have said, the latter conditions are not met here.

92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). But assuming *arguendo* that CNG does assert a cognizable property right, the "paper hearing" procedure used by FERC afforded CNG all the process that was due for the interim accounting determination at issue in this case. Due process ordinarily requires "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest," *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (emphasis in original), but "[t]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings," *id.* at 378, 91 S.Ct. at 786. The "ordinary principle" is that "something less than ... [a formal] evidentiary hearing is sufficient prior to adverse administrative action," *Mathews v. Eldridge,* 424 U.S. 319, 343, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976). Here, as we have stated, CNG did have both notice and an opportunity to be heard before the determination was made, in accordance with the "essential requirements of due process," *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). And since CNG is entitled to a full evidentiary hearing on the identical underlying issues in its rate proceeding, little would be gained by requiring a cumbersome and duplicative formal evidentiary hearing at the interim accounting stage, *cf. Mathews,* 424 U.S. at 340–43, 96 S.Ct. at 905–07; *Loudermill,* 470 U.S. at 545–46, 105 S.Ct. at 1495. We conclude that the paper hearing procedure used here afforded CNG full due process protection.

**C.** *Arbitrary and Capricious Agency Action*

■ Finally, CNG contends that FERC violated the Administrative Procedure Act because its decision was arbitrary, capricious, and not based on substantial evidence in the record. We disagree. CNG argues that FERC's past practice has been to allow regulatory asset accounting treatment for similar

large gas losses. But as both the Chief Accountant and the Commission explained, the facts on which the Commission relied were different in those cases.[5] The gas losses here occurred over a 15–year period, beginning twenty years before CNG's application for regulatory asset treatment. FERC indicated that this timeframe raised serious questions about the accuracy of CNG's inventories, its failure to report the losses sooner and to request appropriate rate adjustments when it must have known these losses were occurring, and the timeliness of its current request. None of these factors appear to have been present in previous FERC decisions to allow regulatory asset treatment. Although CNG now insists it can explain why it was unable to report these losses in a more timely manner, FERC reasonably relied upon the information CNG had provided in its application, its responses to FERC staff inquiries, and its petition for rehearing— none of which adequately explained the time lag. Since FERC regulations require gas companies "to maintain such procedures of verification as will disclose and result in prompt accounting recognition of significant losses," 18 C.F.R. Part 201, Account 117(G) (1994), FERC could reasonably conclude from these submissions that it was not sufficiently probable that CNG would be allowed to recoup the loss through a future rate proceeding to justify regulatory asset treatment. Thus whether or not CNG eventually succeeds in a later rate proceeding, there was substantial evidence in the record as a whole at the time this determination was made to support FERC's denial of CNG's application.

■ Nor can it be said that the principles FERC applied here are themselves arbitrary and capricious. FERC's accounting regulations are consistent with the pronouncements of the Financial Accounting Standards Board, which define assets as probable future economic benefits. *See CNG Transmission Corp.,* 64 F.E.R.C. ¶ 61,110 at 61,917 n. 11 (1993) (citing Financial Accounting Standards

---

5. At least, the facts were different as FERC understood them at the time those determinations were made. CNG now claims that the storage gas losses at its Greenlick and Oakford storage fields, which were allowed regulatory asset treatment, also occurred over multi-year periods, but FERC notes that CNG did not mention this fact in its applications in those cases. J.A. 83.

Board, Financial Accounting Concepts Statement No. 6, *Elements of Financial Statements,* ¶ 25 in *Accounting Standards—Original Pronouncements* (1991)). FERC does not act arbitrarily or capriciously by denying regulatory asset treatment for a gas loss in the absence of a showing that the regulated party will likely receive a future economic benefit by recouping the loss in its future rates.

### III. Conclusion

For the foregoing reasons, CNG's petition for review is denied.

*So ordered.*