# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Filed November 21, 2006

No. 05-1147

VIRGINIA STATE CORPORATION COMMISSION,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

PJM INTERCONNECTION, L.L.C. AND
VIRGINIA ELECTRIC AND POWER COMPANY,
INTERVENORS

———

Consolidated with
05-1149

———

On Petition for Review of an Order of the
Federal Energy Regulatory Commission

———

*John M. Adragna*, *Phyllis G. Kimmel*, and *William H. Chambliss*, were on the brief for petitioner Virginia State Corporation Commission.

*Robert F. McDonnell*, Attorney General, Attorney General's Office for the Commonwealth of Virginia, *Maureen Riley Matsen*, Deputy Attorney General, *C. Meade Browder, Jr.*, Senior Assistant Attorney General, and *D. Mathias Roussy, Jr.*, Assistant Attorney General, were on the brief for petitioner Robert F. McDonnell, *ex rel.* Virginia Division of Consumer Counsel.

*John S. Moot*, General Counsel, Federal Energy Regulatory Commission, *Robert H. Solomon*, Solicitor, and *Samuel Sooper*, Attorney, were on the brief for respondent. *Beth G. Pacella*, Attorney, entered an appearance.

*Kevin M. Downey* was on the brief for intervenor Virginia Electric and Power Company.

Before: SENTELLE, *Circuit Judge*, EDWARDS and WILLIAMS, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: Petitioners challenge two orders of the Federal Energy Regulatory Commission declining to consider whether Virginia Electric and Power Company d/b/a Dominion Virginia Power ("Dominion") can treat as "regulatory assets" certain wholesale and retail costs associated with developing a Regional Transmission Organization ("RTO"). In a lengthy first order, FERC recognized that the start-up costs associated with an RTO are usually treated as regulatory assets for FERC accounting purposes, but noted that certain parties, including the petitioners before us, had raised questions as to whether Dominion could properly recover these costs now or in the future. FERC then went on to conclude that:

At this time, we cannot determine with certainty that all of the costs at issue are, in fact, unrecoverable in Dominion's current retail and wholesale rates or whether all such costs, if deferred, will ultimately be found, in a . . . proceeding [under § 205 of the Federal Power Act, 16 U.S.C. § 824], to be recoverable in future rates. Therefore, Dominion must assess all available evidence bearing on the likelihood of rate recovery of these costs in periods other than the period they would otherwise be charged to expense under the general accounting requirements for costs . . . . If based on such assessment, Dominion determines that it is probable that these costs will be recovered in rates in future periods, it should record a regulatory asset for such amounts.

*PJM Interconnection, L.L.C.*, 109 F.E.R.C. ¶ 61,012 at P54 (2004). In denying petitions for rehearing and clarification, FERC observed that because no rate proposal had been pending, it had made no finding regarding "the recoverability of a regulatory asset." 110 F.E.R.C. ¶ 61,234 at P41 (2005).

In their briefs here petitioners have made their concern clear. Dominion operates under a 2001 stipulation that limits its rate increases until July 1, 2007. See *Application of Virginia Electric and Power Company for Approval of a Functional Separation Plan Under the Virginia Electric Utility Restructuring Act*, 214 P.U.R.4th 17 (2001); Virginia State Corporation Commission Reply Br. at 8. Petitioners would prefer that as many as possible of the costs in question be "charged" to ratepayers during the rate-limited period, thereby shifting some or all of the burden to Dominion's current investors. They contend that the Commission's ruling here, declining to decide which costs are recoverable and at what time, will diminish consumers' benefit from the stipulation.

On the merits—which we do not reach—petitioners argue that FERC's failure to reject Dominion's request for regulatory asset treatment was arbitrary and capricious both because it failed to explain why it considered itself unable to determine the proper accounting treatment for Dominion's costs and because permitting Dominion to decide the accounting issue itself, in the first instance, is inconsistent with FERC's statutes and regulations. But petitioners' lack of standing bars us from reaching these issues. Specifically, we find that petitioners cannot point to the requisite injury-in-fact, see *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), and have not been aggrieved by the orders.

"To show aggrievement, a plaintiff must allege facts sufficient to prove the existence of a 'concrete, perceptible harm of a real, non-speculative nature.'" *N.C. Util. Comm'n v. FERC*, 653 F.2d 655, 662 (D.C. Cir. 1981) (quoting *Public Citizen v. Lockheed Aircraft Corp.*, 565 F.2d 708, 716 (D.C. Cir. 1977)). Petitioners allege two types of harm. The first is that the contested orders have "an immediate rate impact on Dominion's retail customers." Virginia State Corporation Commission Br. at 48. The second is that the orders deny investors (and regulators) FERC's appraisal of Dominion's asset base, thereby increasing the likelihood that those parties will incorrectly "evaluat[e] Dominion's financial health and activities." *Id.* We reject both theories of injury.

Petitioners' claim of a rate effect is belied by the proposition that "[a]ccounting practices are not controlling for ratemaking purposes." *Consol. Gas Supply Corp.*, 14 F.E.R.C. ¶ 61,029 at 61,054 (1981); *Williston Basin Interstate Pipeline Co.*, 56 F.E.R.C. ¶ 61,104 at 61,370-71 (1991). Moreover, guidance as to accounting treatment "do[es] not effect [sic] the burden of proof in any presently pending or future rate proceeding." *Am. Elec. Power Serv. Corp.*, 104 FERC ¶ 61,013 at 61,035 (2003). Petitioners do not contest

these propositions, which the Commission asserted prominently in its brief here.

Instead petitioners claim that FERC has somehow "delegated to Dominion the discretion whether to treat the costs as a regulatory asset." But this is no response at all. Given that the accounting issue is independent of the ultimate cost-recovery issue, and that the latter will be settled in a rate proceeding when and if Dominion files rates seeking recovery, petitioners haven't explained how the Commission's failure to decide the issue will affect the ultimate rate treatment.

Petitioners' alternative theory is that FERC's accounting guidance, or its failure to guide, will injure investors by withholding from them some additional light on the utility's financial condition that a FERC ruling would add. They cite our decision in *CNG Transmission Corp. v. FERC*, 40 F.3d 1289, 1292–93 (D.C. Cir. 1994), where we found that a company had standing to challenge an accounting decision that stuck the company with an (apparent) $7 million loss, with effects, we thought, on the value of the company's stock. *CNG* is analogous, petitioners argue, because FERC's order here permits Dominion to book $275 million of unauthorized regulatory assets over the next six years, to the confusion of state and federal regulators and to the detriment of investors who will be unable to accurately "evaluat[e] Dominion's financial health and activities." Virginia State Corporation Commission Br. at 48.

We have some uncertainty about petitioners' dramatic switch from being a champion of ratepayers, against Dominion's current investors, to being a champion of investors as a class, against uncertainty. But we put that aside. Reliance on standing in the form of probabilistic injury—here, an increase in the probability the investors will

inaccurately evaluate Dominion's financial position—requires a showing of a "substantial probability" of the alleged injury. See *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002); see also *520 S. Mich. Ave. Assocs. Ltd. v. Devine*, 433 F.3d 961, 962 (7th Cir. 2006) ("Standing depends on the probability of harm, not its temporal proximity."). The word "substantial" of course poses questions of degree, questions far from fully resolved. We have left open, for instance, the question whether, in the realm of environmental risk, "any 'scientifically demonstrable increase in the threat of death or serious illness' . . . is sufficient for standing," *Natural Res. Def. Council v. EPA*, 464 F.3d 1, 2006 WL 2472144 at 4 (D.C. Cir. 2006), and have noted a conflict among the circuits on the point. Compare *Baur v. Veneman*, 352 F.3d 625, 634 (2d Cir. 2003); *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 947-48 (9th Cir. 2002); *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 160 (4th Cir. 2000) (en banc), with *Shain v. Veneman*, 376 F.3d 815, 818 (8th Cir. 2004); *Baur*, 352 F.3d at 651 & n.3 (Pooler, J., dissenting). Outside the realm of environmental disputes, moreover, we have suggested that a claim of increased risk or probability cannot suffice. Compare *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1161 (D.C. Cir. 2005), with *id.* at 1166-68 (Edwards, J., concurring).

We need not face those issues here, however, as petitioners have made no showing that FERC's order could generate a non-trivial increase in the likelihood that investors will inaccurately evaluate Dominion's financial position. Indeed, petitioners have made no showing at all beyond their citation of *CNG*. They certainly haven't explained how any investor savvy enough to monitor FERC decisions of this sort wouldn't also be savvy enough to recognize their extraordinarily limited import. FERC's order calls upon Dominion to assess whether its start-up costs meet the requirements of a regulatory asset. And Dominion's

resolution of that issue will, as we've already said, be only a threshold event before resolution of the matter of most interest to investors (and petitioners)—the extent to which the costs can be recovered in collectible rates.

As to the pure accounting issue (as opposed to ratemaking), petitioners' best claim may be that resolution by FERC now, instead of first waiting for a perhaps more biased determination by Dominion, will afford investors more clarity as to the true condition of Dominion's business by accelerating the enlightenment provided by an agency determination. But petitioners in no way frame their contention as a matter of agency *delay*, so we need not reach that issue. See *Telecommunications Research & Action Center v. FCC*, 790 F.2d 70 (D.C. Cir. 1984). Any incremental uncertainty resulting from the order therefore falls far short of substantially increasing the risk that investors will inaccurately appraise Dominion's overall financial standing. Compare *Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1234-35 (D.C. Cir. 1996) (finding standing for "non-trivial" increment in risk), with *Sierra Club v. EPA*, 292 F.3d at 898 (requiring "substantial probability" of injury).

Petitioners have failed to show how FERC's decision (or non-decision) could cause them or those they represent injury-in-fact, by materially affecting either customers' rates or the clarity of investors' understanding of Dominion's financial position. The petitions for review are therefore

*Dismissed*.